RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name:  11a0236p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

STATE OF OHIO EX REL. SUSAN BOGGS;
FOUAD RACHID, for himself and as next
friend for Nicole Rachid; and FOUAD, INC.,
            *Plaintiffs-Appellants,*

No. 09-4403

                *v.*

CITY OF CLEVELAND,
            *Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 08-02153—Dan A. Polster, District Judge.

Argued:  March 4, 2011

Decided and Filed:  August 25, 2011

Before:  MOORE and WHITE, Circuit Judges; VARLAN, District Judge.[*]

_____

## COUNSEL

**ARGUED:**  David E. Mills, THE MILLS LAW OFFICE LLC, Cleveland, Ohio, for Appellants.  Thomas J. Kaiser, CITY OF CLEVELAND, DEPARTMENT OF LAW, Cleveland, Ohio, for Appellee.  **ON BRIEF:**  David E. Mills, THE MILLS LAW OFFICE LLC, Cleveland, Ohio, for Appellants.  Thomas J. Kaiser, Joseph G. Hajjar, CITY OF CLEVELAND, DEPARTMENT OF LAW, Cleveland, Ohio, for Appellee.

---

[*]The Honorable Thomas A. Varlan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

————————————

**OPINION**

————————————

THOMAS A. VARLAN, District Judge.  Susan Boggs ("Boggs") and Fouad
Rachid ("Rachid"), individually and on behalf of their minor daughter, and Fouad, Inc.
("Fouad") (Boggs, Rachid, and Fouad, together, the "relators") appeal the district court's
order dismissing their action on the basis of res judicata in favor of the City of Cleveland
(the "City").  For the following reasons, we reverse the district court and remand the
case for further proceedings.

**I.  BACKGROUND**

In 1995, Fouad purchased the property located at 24505 Barrett Road in Olmsted
Township, Ohio (the "subject property").  Fouad is an Ohio corporation, and Rachid is
its President and majority shareholder.  Since 1995, Boggs and Rachid have lived on the
subject property with their daughter.  According to the relators, the subject property is
positioned under the flight paths of two runways—currently known as 6L-24R and 6R-
24L—of the Cleveland Hopkins International Airport (the "Airport").

In 2002, the relators filed a class-action mandamus action in the Court of
Common Pleas, Cuyahoga County, Ohio seeking to compel the City, pursuant to Article
I, Section 19 of the Ohio Constitution, to initiate appropriation proceedings with respect
to property located near the Airport, including the subject property (the "2002 Action").
The relators claimed the level and frequency of flights over the property so interfered
with their use and enjoyment of the property that it had been taken for public use without
just compensation.

The City moved to dismiss the 2002 Action, arguing that Boggs and Rachid
lacked standing to bring the action because they had no legal interest in the subject
property as it was owned by Fouad.  The City also argued that Fouad failed to state a
claim on the merits because, as a corporation, it could not use the subject property as a

residence. The court granted the City's motion stating only: "Plaintiff's [sic] motion to dismiss complaint for failure to state a claim upon which relief can be granted filed on 11-21-02, is granted. Final." Appellant Br. 7; *see also* Appellee Br. 8.

The relators appealed to the state court of appeals, which dismissed the appeal, concluding that the trial court's order was not a final, appealable order because it dismissed the complaint without prejudice. In response, the trial court issued an order stating only: "Plaintiff's [sic] motion to dismiss complaint for failure to state a claim upon which relief can be granted filed 11-21-02, is granted. Complaint is dismissed with prejudice. Final." Appellant Br. 7; *see also* Appellee Br. 8–9. The relators did not appeal this order.

On August 1, 2008, the relators filed a new mandamus action in Ohio state court, seeking to compel the City to commence appropriation proceedings with respect to the subject property pursuant to the Fifth Amendment to the United States Constitution, the Ohio Constitution, and other applicable laws (the "2008 Action"). In the 2008 Action, the action underlying this appeal, the relators allege the City relocated runway 6L-24R in a phased construction project undertaken around 2000 and further expanded that runway in August 2004. They also allege that in 2007, the same runway was expanded to accommodate larger aircraft with heavier fuel loads, and that the expansion of runway 6R-24L is underway.

On the basis of these allegations, and others, the relators claim the subject property lies 3,700 feet from runway 6L-24R in violation of federal laws and Federal Aviation Administration regulations. They also claim the expanded runways resulted in increased runway traffic and intolerable noise, filth, and general disruption, which interferes with their use and enjoyment of the subject property. In addition, the relators claim they have been exposed to harmful or cancer-causing toxins as a result of the expanded runways, which contaminated their well water and will require medical monitoring.

The City removed the case to federal court and, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, filed a motion to dismiss based on res judicata. The district court granted the motion and dismissed the action with prejudice. The relators timely appealed.

## II. STANDARD OF REVIEW

We review de novo a district court's order granting a motion to dismiss pursuant to Rule 12(b)(6). *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008) (citation omitted). We also review "de novo a district court's application of res judicata." *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) (quoting *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009)).

## III. DISCUSSION

State-court judgments are given the same preclusive effect under the doctrines of res judicata and collateral estoppel as they "would receive in courts of the rendering state." *ABS Indus., Inc. ex rel. ABS Litig. Trust v. Fifth Third Bank*, 333 F. App'x 994, 998 (6th Cir. 2009) (quoting *Ingram v. City of Columbus*, 185 F.3d 579, 593 (6th Cir. 1999)). In other words, "'[i]f an individual is precluded from litigating a suit in state court by the traditional principles of res judicata, he is similarly precluded from litigating the suit in federal court.'" *Id.* (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1537 (6th Cir. 1987)). We look "to the state's law to assess the preclusive effect it would attach to that judgment." *Id.* (citations omitted).

"Under Ohio law, the doctrine of res judicata consists of 'the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel.'" *Doe ex rel. Doe v. Jackson Local Schs. Sch. Dist.*, No. 10-3272, 2011 WL 1792814, at *3 (6th Cir. May 11, 2011) (quoting *O'Nesti v. DeBartolo Realty Corp.*, 862 N.E.2d 803, 806 (Ohio 2007)). "'Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject of a previous action.'" *Id.*

(citations omitted). The doctrine "bars subsequent actions whose claims 'could have been litigated in the previous suit[.]'" *Id.* (alteration in original and citation omitted). Issue preclusion, on the other hand, "prevents the 'relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies[,]' even if the causes of action differ." *Id.* (alteration in original and citation omitted). A review of the parties' arguments reveals that they use the term "res judicata" to refer to claim preclusion only.

The Sixth Circuit has interpreted Ohio's doctrine of claim preclusion as having four elements:

> (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

*Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997) (quoting *Felder v. Cmty. Mut. Ins. Co.*, No. 96-3320, 1997 WL 160373, at *3–4 (6th Cir. April 4, 1997) (unpublished)). The party asserting the defense bears the burden of proof. *ABS Indus.*, 333 F. App'x at 998 (citing *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008)).

**A. Relators Boggs and Rachid**

The relators argue the 2002 Action was not dismissed on the merits as to Boggs and Rachid because their claims were dismissed for lack of standing.[1] Indeed, under Ohio law, dismissals for want of standing do not have preclusive effect because they are not decided "on the merits." *State ex rel. Coles v. Granville*, 877 N.E.2d 968, 977 (Ohio 2007) (citations omitted); *Asher v. City of Cincinnati*, No. C-990345, 2000 WL 955617, at *1 (Ohio Ct. App. Dec. 23, 1999) (finding a prior suit was not decided on the merits

---

[1] The state trial court said little in dismissing Boggs and Rachid, but the parties agree that Boggs and Rachid were dismissed for lack of standing. We proceed accordingly.

because it was dismissed for lack of standing); *A-1 Nursing Care of Cleveland, Inc. v. Florence Nightingale Nursing, Inc.*, 647 N.E.2d 222, 225 (Ohio Ct. App. 1994) (noting that a "motion to dismiss for lack of standing terminates the action other than on the merits and affords proper parties the opportunity to refile without fear of the effects of *res judicata*"). The City, however, contends that because the relators failed to appeal the trial court's second order, which included the language "dismissed with prejudice," Boggs and Rachid acquiesced to the finality of that judgment, thus triggering the application of res judicata.

Although the City's argument is not without support under Ohio law, *see*, *e.g.*, *Mason v. GFS Leasing and Mgmt.*, No. 79536, 2002 WL 192097, at *3 (Ohio Ct. App. Feb. 7, 2002) (applying res judicata where appellant failed to appeal the trial court's erroneous, final judgment applying res judicata in a prior case), we cannot find that the 2002 Action was dismissed "on the merits" with respect to Boggs and Rachid in light of *Superior Piping Contractors, Inc. v. Reilly Industries, Inc.*, No. 84871, 2005 WL 678987 (Ohio Ct. App. Mar. 24, 2005).**[2]**

In *Superior Piping*, Superior Piping Contractors, Inc. ("Superior") filed a complaint against Reilly Industries, Inc. ("Reilly"), asserting that Reilly breached its contract with Superior. 2005 WL 678987, at *1. The trial court dismissed the complaint with prejudice, finding Superior did not have standing. *Id.* On appeal, Superior asserted that the trial court erred in dismissing the complaint on the basis that it lacked standing, but the court of appeals affirmed the trial court's decision. *Id.* Superior subsequently moved the court of appeals for reconsideration and clarification, "arguing for the first time that the trial court's dismissal should read 'without prejudice' rather than 'with prejudice' because it was based on Superior's 'lack of standing.'" *Id.* The court of appeals denied the motion because Superior failed to raise the issue before the trial court or on appeal. *Id.*

---

**[2]**In response to a request from the panel during oral argument, the parties submitted letter briefs concerning the application of *Superior Piping*.

Two years later, Superior filed another complaint against Reilly, "alleging virtually identical claims as those in the prior action." *Id.* Reilly moved for summary judgment on the ground that Superior's claims were barred by res judicata, and the trial court granted the motion. *Id.* Superior appealed again, arguing that the trial court erred in dismissing on the basis of res judicata. *Id.*

Recognizing that a dismissal for lack of standing is not an adjudication on the merits for purposes of res judicata, the court of appeals reversed. *Id.* at *2. It found that it was "erroneous for the trial court to dismiss Superior's claims with prejudice in the prior action, when the basis for the dismissal—that Superior lacked standing to sue—was purely procedural and did not concern the substance of the case." *Id.* Further, the court of appeals found:

> While Superior waived this error by raising it for the first time with this court on a motion for re-consideration, to preclude Superior's second action only continues the error from the prior action without Superior's claims ever adjudicated "on the merits." Because adjudication "on the merits" is a prerequisite to the application of res judicata, the trial court erred in granting summary judgment to Reilly, as there has never been a valid, final judgment on the merits of Superior's claims.

*Id.*

Here, in the 2002 Action, the City moved to dismiss Boggs and Rachid for lack of standing. The trial court granted the City's motion, stating only: "Plaintiff's [sic] motion to dismiss complaint for failure to state a claim upon which relief can be granted filed on 11-21-02, is granted. Final." Appellant Br. 7; *see also* Appellee Br. 8. The relators appealed the decision, but the court of appeals dismissed the appeal, concluding the trial court's order was not a final, appealable order because it dismissed the complaint without prejudice. In response, the trial court issued an order stating: "Plaintiff's [sic] motion to dismiss complaint for failure to state a claim upon which relief can be granted filed 11-21-02, is granted. Complaint is dismissed with prejudice. Final." Appellant Br. 7; *see also* Appellant Br. 8–9. The relators, however, did not appeal this order.

Given that Ohio law instructs that dismissals for lack of standing do not trigger res judicata, the state trial court appears to have erred in dismissing the 2002 Action with prejudice with respect to Boggs and Rachid in response to the state court of appeals dismissing the relators' appeal. Although the relators did not appeal that erroneous order, the state court's dismissal of the 2002 Action with prejudice with respect to Boggs and Rachid was "purely procedural." *Superior Piping*, 2005 WL 678987, at *2. No court has considered the merits of Boggs's and Rachid's claims; thus, res judicata cannot preclude Boggs and Rachid from asserting them.

Moreover, a principle advanced in Ohio case law, that "[t]he binding effect of res judicata has been held not to apply when fairness and justice would not support it," *Builders Dev. Group, L.L.C., v. Smith*, No. 23846, 2010 WL 3448574, at *3 (Ohio Ct. App. Sept. 3, 2010) (alteration in original and citations omitted), compels us to find that res judicata does not apply to Boggs's and Rachid's claims. Even assuming that Ohio law treats Boggs's and Rachid's failure to appeal as triggering the application of res judicata—as the City argues—their claims have never been decided on the merits, and "[u]nder [such] circumstances, rigid application of res judicata would defeat the ends of justice." 2010 WL 3448574, at *3–4 (discussing situations where application of res judicata is manifestly unjust).

Accordingly, the district court erred in finding that the City established the second element of claim preclusion—that there was a prior final, valid decision on the merits—with respect to Boggs and Rachid.

**B.  Relator Fouad**

The parties agree *Superior Piping* does not apply to Fouad and that there was a prior final, valid decision on the merits with respect to Fouad because Fouad was dismissed as a party to the 2002 Action for failure to state a meritorious claim. The parties also agree that the second action involves the same parties or their privies as the first action. Consequently, we must consider whether the district court erred in finding either that the 2008 Action raises claims that were or could have been litigated in the

2002 Action or that the 2008 Action arises out of the transaction or occurrence that was the subject matter of the 2002 Action. We find that the district court erred in both respects.

The relators' arguments concerning the third and fourth elements of claim preclusion are somewhat intertwined, but they essentially argue three new occurrences took place after the filing of the 2002 Action that preclude the application of res judicata: (1) the runways were expanded, moving one runway closer to the home on the subject property and causing dangerously increased decibel levels and new damage to the property; (2) the expanded runways poisoned the relators' sole water supply with jet fuel and toxins; and (3) the relators learned that the City placed the subject property on the Airport Layout Plan (the "Plan"), thus certifying to the Federal Aviation Administration that it would acquire the property. The relators further argue that their claims related to the expanded runways were not ripe in 2002 because facts necessary to bring those claims were not known at that time, including those related to decibel levels and water contamination.

The City takes the position that "not a single new event has occurred since the 2002 Complaint was dismissed" and that the relators "are seeking to compel the City to purchase the property based on the City's alleged interference with their property rights which began since after they purchased the property in 1995." Appellee Br. 17. In addition, the City argues that all of the claims asserted in the 2008 Action were or could have been asserted in the 2002 Action.

### 1.  Whether the Current Claims Could Have Been Raised in the 2002 Action

Pursuant to Ohio's ripeness doctrine, res judicata does not apply to claims that were not ripe for review in a previous action. *See Katt v. Dykhouse*, 983 F.2d 690, 693 (6th Cir. 1992) (applying Michigan's ripeness doctrine to determine that the plaintiff could not have raised a claim in a previous action because that claim did not ripen until after judgment was entered in that action); *State v. Smith*, No. 4-06-18, 2006 WL 2795609, at *2 (Ohio Ct. App. Oct. 2, 2006) (declining to apply the doctrine of res

judicata because the issue was not previously ripe). Ohio law dictates that "a claim is not ripe if the claim rests upon 'future events that may not occur as anticipated, or may not occur at all.'" *State v. McCarty*, No. CA2006-04-093, 2007 WL 1394580, at *3 (Ohio Ct. App. May 14, 2007) (citation omitted). When an injury is not yet present, a claim is not ripe even when "the alleged action of the defendant foretells legal injury to the plaintiff." *State ex rel. Elyria Foundry Co. v. Indus. Comm'n*, 694 N.E.2d 459, 460 (Ohio 1998) (citation and internal quotation marks omitted).

In the 2008 Action, the relators allege the "expansion [of the runway] has resulted in increased runway traffic that has interfered with Relator's use and enjoyment of the[ir] Property." Comp. ¶¶ 4–5; *see also id.* at ¶ 33 (alleging environmental harm from "increased air traffic of the expanded runways"). The City had planned the Airport's expansion and undertaken the first stage of the expansion well before the 2002 Action was filed, a point the City relies upon heavily; however, the 2004 and 2007 runway expansions had not yet occurred when the relators commenced the 2002 Action and the environmental damages that the relators would incur from those expansions was indeterminate. Hence, the claims about the effects of the 2004 and 2007 runway expansions were not ripe in 2002 under Ohio law because, although the alleged actions of the City expanding the runway may have foretold their injury, the relators' damages were at best speculative at that time. Res judicata, therefore, cannot bar the claims related to the effects of the expansions in 2004 and 2007.

### 2.      Whether the 2008 Action is Premised on a New Transaction or Occurrence

Ohio's res judicata doctrine precludes later suits based on the "transaction, or series of connected transactions, out of which the [first] action arose." *Grava v. Parkman Twp.*, 653 N.E.2d 226, 229 (Ohio 1995). "Transaction" is defined as a "common nucleus of operative facts." *Id.* (quoting Restatement (Second) of Judgments § 24 cmt. b (1982)). "'That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories . . . would

emphasize different elements of the facts." *Id.* (quoting Restatement (Second) of Judgments § 24 cmt. c).

In *Grava*, the plaintiff's "second application for a zoning certificate [wa]s barred by the doctrine of *res judicata*" because it and a previous application sought permission "to construct exactly the same building on the same tract of land." *Id.*; *see also Hundley v. Vectren Energy Delivery of Ohio, Inc.*, No. 19870, 2003 WL 22763899, at *5 (Ohio Ct. App. Nov. 21, 2003) (holding that a plaintiff relied on the same operative facts because both of his suits were "based upon the invoices that [he] received . . . between January and December of 2002" and the only difference was the "mathematical errors" that he alleged). The plaintiff argued that barring the second action would be "unfair," but the Ohio Supreme Court found that, "*[a]bsent changed circumstances*, refusing to allow [the plaintiff] to use an alternative legal theory overlooked in the previous proceedings does not work an injustice." *Grava*, 653 N.E.2d at 230 (emphasis added).

We find the 2004 and 2007 runway expansions are distinct events from any earlier expansion and that they resulted in new facts and "changed circumstances," *id.*, not merely new legal theories. Indeed, the relators submit the expansions completed after the commencement of the 2002 Action caused "worsening conditions" and that there was "a substantial change in the scope of continuing harm related to the noise, property damage, and [health] dangers." Appellant Br. 24. Accordingly, the claims related to the 2004 and 2007 expansions are premised on a new transaction or occurrence and res judicata cannot apply to bar them.

In sum, the district court erred in dismissing the 2008 Action as to Fouad because the claims based upon the 2004 and 2007 expansions could not have been raised in the 2002 Action and are premised on a new transaction or occurrence distinct from the subject matter of the 2002 Action.

## IV. CONCLUSION

For the reasons explained herein, we **REVERSE** the decision of the district court dismissing the action on the basis of res judicata and **REMAND** to the district court for further proceedings consistent with this opinion.